## SPOETZL v. UNITED STATES.
### No. 6500.

Circuit Court of Appeals, Fifth Circuit.
Jan. 28, 1933.

William H. Scott and John A. Vivier, both of Houston, Tex., for appellant.

H. M. Holden, U. S. Atty., of Houston, Tex.

Before BRYAN, SIBLEY, and HUTCHESON, Circuit Judges.

HUTCHESON, Circuit Judge.

Appellant, charged jointly with Joe Koncaba with unlawful possession and unlawful transportation of intoxicating liquor, to wit, beer, was convicted on both counts. Spoetzl alone appeals. He urges here that the evidence made no case against him; that the refusal of his motion for an instructed verdict was error.

Though the evidence was circumstantial, it made a case for the jury which amply supports the verdict. The incriminating facts, established by the uncontradicted testimony, are: Spoetzl operates in Shiner, Tex., under license, a brewery where near beer is made. Koncaba has been an employee of his at the brewery for some six years, and has hauled beer by truck to Houston and other points. Spoetzl's and another brewery, located at San Antonio, were the only licensed breweries in Texas at the time of the arrest. To make near beer, beer is first made, then put through a process of reboiling to take the alcohol out of it. The beer in question was brewery beer; that is, beer which had been made at a brewery. At 1:30 o'clock on the morning of April 27th, Koncaba was arrested in Houston, Tex., while driving Spoetzl's truck heavily loaded with beer, with a canvas over the load. To inquiries as to his destination and business, he answered that he was to deliver the load to an unknown man at a certain corner which he named. To this corner he and the officers went, but, though they waited there for nearly an hour, no man appeared. Taken to jail, he was held there until Spoetzl, notified by telephone of his arrest, came to Houston, arranged bond for him, secured a lawyer to defend him, and put him back to work. Except for the flat denial of Koncaba, and his attempted explanation of his presence in Houston with the load, and the equally flat denial of Spoetzl that he knew of or had anything to do with the haul, no explanation was made.

At the trial Koncaba's explanation of the matter was that he had worked six years for Spoetzl in and around the brewery, and had hauled near beer under permit to Houston and other points; that he had Spoetzl's general consent to use his truck; that on Sunday afternoon an unknown and unidentified man told him that he had broken down with his truck on the way to Houston, and offered him a few dollars to take the load there; that, making small earnings, and needing money, he agreed to take it; that in Spoetzl's truck he went with the stranger at about 4 o'clock in the afternoon to where the truck was broken down, a short distance out of Shiner; that he loaded the truck up, went back to his own house, changed his clothes, and started about 7 o'clock for Houston, the man employing him telling him that he would go on ahead and meet the load there; that Spoetzl knew nothing of, and had nothing to do with, the transaction.

The officers testified that the statement he made to them was in substance that he left Spoetzl's brewery on Sunday with a truckload of beer to deliver it at the corner of San Jacinto and Elgin streets; that he had orders not to collect anything for it; that, when he went to get the truck, he found it loaded at the house of Spoetzl just across the street from the brewery. As to this purported conversation, Koncaba testified he might have made that statement; that he just said what the officers wanted him to say; that they had asked him where he started from, and he told them Spoetzl's yard, because that was where he filled up with gas.

Spoetzl testified very briefly. He admitted that the truck was his and that Koncaba was his employee. He said he knew nothing about the truckload of beer, that he was not in Shiner on that Sunday, having left for his farm at Orange Grove about 1 or 2 o'clock in the morning, from which he returned at about 11 that night; that he did not own the beer or make the beer in question, or know anything about it; that all that he made in

his brewery was near beer; that he had been in this country seventeen years, and never had been convicted. The justice of the peace from his neighborhood testified to the good reputation of both defendants.

In a full charge, to which no exception was taken, the court correctly submitted the issues to the jury. Appellant urges that if the evidence that he owned a brewery, that the beer was made at a brewery, that it was found on his truck in the possession of his driver, who was undertaking to deliver it, that, when notified of the driver's arrest, he did not accuse or upbraid him, but secured his release from jail, took charge of his defense, and put him back to work, and the testimony of the officers as to Koncaba's statement to them that he had started from Spoetzl's brewery with the load with instructions to deliver it to an unknown person, would have made a case, in the absence of explanation, it fails to do so because Koncaba and Spoetzl both positively denied his connection with the transaction.

We cannot agree with this view. Certainly, if defendants had attempted no explanation, the case would have amply supported a verdict of guilty. Willmering v. U. S. (C. C. A.) 61 F.(2d) 1009; Nounes v. U. S. (C. C. A.) 4 F.(2d) 833. When the defendants took the stand to explain, it was for the jury to say whether on the whole case they had a reasonable doubt of the guilt of defendants. They may well have found the strange and improbable tale told by Koncaba more inculpating than exculpating, and Spoetzl's flat denial of connection with the matter wholly unconvincing.

The judgment is affirmed.